IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANNA LOBISCH, Individually, and ) as Personal Representative for ) the Estate of Abigail Lobisch, ) a Minor, Deceased, and as Next ) Friend of Zachariah Lobisch, a ) Minor; and JAMES LOBISCH, ) Individually, )<br>)<br>                Plaintiffs, )<br>)<br>         vs. )<br>)<br>UNITED STATES OF AMERICA; )<br>ISLAND PALM COMMUNITIES, LLC; )<br>DOE DEFENDANTS 1-10, )<br>)<br>                Defendants. )<br>)<br>_____ ) | CIV. NO. 20-00370 HG-KJM |

**ORDER DENYING DEFENDANT UNITED STATES' MOTION TO DISMISS**
**(ECF No. 36)**

Plaintiffs James Lobisch and Anna Lobisch, Individually, and as Personal Representative for the Estate of her deceased daughter, Abigail Lobisch, and as Next Friend of her son, Zachariah Lobisch, filed suit against the Defendants the United States of America and Island Palm Communities, LLC.

Plaintiffs claim that their 7-month old child, Abigail, died while she was in the care of Denise "Dixie" Villa ("Villa"), who was allegedly operating an unauthorized child care business in on-base military housing.  Plaintiffs assert that Villa gave their daughter a lethal dose of Benadryl while she stayed in Villa's child care overnight in February 2019.

1

Plaintiffs claim that Villa operated the unauthorized childcare business out of military housing located on the Aliamanu Military Reservation in Honolulu, Hawaii.

The First Amended Complaint alleges that the Defendant United States' employees and military personnel, acting within the course and scope of their employment, were aware of the unauthorized childcare business operated by Villa.  Plaintiffs claim the Defendant United States had notice that the childcare facility had exposed numerous children to dangerous conditions and neglect.

Plaintiffs claim that Defendant Island Palm Communities, LLC was the property manager responsible for the use and maintenance of the homes located on the military base where Villa operated her child care.

Plaintiffs assert that despite Defendants' knowledge of the dangerous conditions and unauthorized activities by Villa, Defendants and their employees failed to shut down Villa's childcare business.  In addition, Plaintiffs claim Defendants failed to warn parents of child endangerment and neglect at Villa's business and failed to contact Child Protective Services of the State of Hawaii.

Plaintiffs' First Amended Complaint asserts claims against the Defendants United States and Island Palm Communities, LLC for negligence, wrongful death, negligence per se, negligent infliction of emotional distress, and loss of consortium.

Defendant United States moves to Dismiss on two separate bases.

First, the United States asserts that Plaintiffs' tort claims are barred by sovereign immunity pursuant to Fed. R. Civ. P. 12(b)(1).  The United States asserts that the Federal Tort Claims Act waives sovereign immunity for certain tort claims against the United States and its employees, but it argues there is an exception in this case.  The United States argues that the Discretionary Function Exception to the Federal Tort Claims Act's waiver of sovereign immunity bars Plaintiffs from bringing their claims here.  Specifically, the United States argues that Plaintiffs' claims involve discretionary decisions by the United States and its employees that may not be challenged in court.

Second, the United States argues that Plaintiffs have alleged insufficient facts to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  The United States asserts that it had no duty to protect the Plaintiffs' child.  Further, the United States argues that the child's death at an unlicensed child care on the military base was not foreseeable or preventable.

The Defendant United States' Motion to Dismiss (ECF No. 36) is **DENIED**.

## PROCEDURAL HISTORY

On August 26, 2020, Plaintiffs filed their Complaint.  (ECF No. 1).

On the same date, Plaintiffs filed an Ex Parte Motion for

Leave to Proceed Under Pseudonyms.  (ECF No. 4).

On August 31, 2020, the Magistrate Judge issued an ORDER DENYING PLAINTIFFS' EX PARTE MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS.  (ECF No. 9).

On September 1, 2020, Plaintiffs filed the FIRST AMENDED COMPLAINT.  (ECF No. 10).

On January 6, 2021, Defendant United States filed its Motion to Dismiss.  (ECF No. 36).

On January 8, 2021, the Court issued a briefing schedule. (ECF No. 37).

On January 28, 2021, Plaintiffs filed their Opposition. (ECF No. 41).

On February 2, 2021, Defendant Island Palm Communities, LLC filed its Statement of No Opposition.  (ECF No. 44).

On February 16, 2021, Defendant United States filed its Reply.  (ECF No. 46).

On February 24, 2021, the Court held a hearing on Defendant's Motion to Dismiss.  (ECF No. 49).

## BACKGROUND

### UNITED STATES ARMY REGULATION 608-10 GOVERNS THE OPERATION OF CHILDCARE FACILITIES ON MILITARY BASES

The United States Army has enacted various regulations governing conduct on its military bases.  One such Regulation, Army Regulation 608-10, governs the policies and procedures for providing childcare services on military bases.  (United States

Army Regulation ("AR") 608-10 § 6-1, available at https://
armypubs.army.mil/epubs/DR pubs/DR a/pdf/web/ARN3218 AR608-
10 Web FINAL.pdf).

Pursuant to Chapter 6 of Army Regulation 608-10, a Family
Child Care Office must be established on military bases to
oversee certification of childcare businesses on its premises.
The Family Child Care Office is required to investigate and close
unauthorized childcare operations.  Id. at § 6-38(a), (b), (e),
(f)(3).

Army Regulation 608-10 requires that childcare businesses
operating out of owned or leased quarters or privately owned
housing located on military bases must be certified by the Family
Child Care Office.  Id. at § 1-8(e).

**UNITED STATES ARMY REGULATION 420-1 GOVERNING ARMY FACILITIES
MANAGEMENT**

United States Army Regulation 420-1 governs the policies and
procedures for the operation of U.S. Army housing.  AR 420-1 § 1-
1.  Section 3-18 addresses termination of family housing, and
provides that Government housing may be terminated at the
discretion of the garrison commander for violation of the housing
rules.  Id. at § 3-18(a)(2).

**FACTS ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT**

The following facts are alleged in the First Amended
Complaint and are treated as true for purposes of the Defendant

United States' Motion to Dismiss:

### Villa Operated an Unlicensed Child Care Business on a Military Base in Washington State in 2015

According to the First Amended Complaint, in 2015, Denise "Dixie" Villa ("Villa") and her husband Chief Petty Officer Aaron Villa and their children resided in housing provided by the Defendant United States within Naval Air Station Whidbey Island in Washington State.  (First Amended Complaint ("FAC") at ¶ 21, ECF No. 10).

Plaintiffs allege that Villa operated an unauthorized childcare center from her residence on the military base in Washington State in violation of Department of Defense regulations.  (Id. at ¶ 22).  Plaintiffs claim that Villa's unauthorized business was reported both to the Family Child Care Office at the military base and to her husband's chain of command.  (Id. at ¶¶ 22-24).  The First Amended Complaint asserts that Chief Petty Officer Villa was instructed by his superior to "shut it down."  (Id. at ¶ 25).

### Villa Family Relocated To Hawaii In 2017

In 2017 Chief Petty Officer Villa was stationed at Joint Base Pearl Harbor Hickam and his family relocated to Honolulu. (Id. at ¶ 26).

The First Amended Complaint alleges that despite the Army's prior knowledge that Denise Villa had previously operated an

unauthorized childcare center in on-base military housing, the United States provided Chief Petty Officer Villa and his family with on-base military housing in Hawaii on the Aliamanu Military Reservation located at 4675 Ke Street, Honolulu, Hawaii.  (Id. at ¶ 27).

Plaintiffs claim that Chief Petty Officer Villa and/or Denise Villa signed a lease with Defendant Island Palm Communities, LLC, which was the entity responsible for managing the property.  (Id. at ¶ 28).  According to the First Amended Complaint, the lease instructed the residents who wished to provide childcare services in their homes to comply with United States Army Regulation 608-10 and to do so under the direction of the Family Child Care Office of the Aliamanu Military Reservation.  (Id. at ¶ 29).

**A Neighbor Of Villa Repeatedly Reported The Operation Of Villa's Unauthorized Child Care Business To U.S. Army Officials Between December 2017 And April 2018**

The First Amended Complaint alleges that in early December 2017, a neighbor of Denise Villa notified Defendant Island Palm Communities, LLC that Villa was operating an illegal childcare facility from her home on the military base without authorization and in violation of United States Army regulations.  (Id. at ¶ 31).  Plaintiffs claim that a representative from Defendant Island Palm Communities, LLC informed the neighbor that she needed to report the issue to the Family Child Care Office for

7

the military base.  (Id.)

The First Amended Complaint alleges that on December 18, 2017, Villa's neighbor, identified as "K.C.," called the Family Child Care Office at the Aliamanu Military Reservation and spoke with Marjorie Williams, an employee in the Office.  (Id. at ¶ 32).  Plaintiffs assert that Ms. Williams confirmed that Villa was not registered or approved to operate a childcare facility at her residence on base.  (Id.)  Plaintiffs claim that the neighbor reported to Ms. Williams that she had seen multiple instances of child neglect.  (Id. at ¶ 33).  Plaintiffs allege that Ms. Williams stated that she would inform her supervisor and that her office would investigate Villa.  (Id.)

Plaintiffs allege that K.C. called Ms. Williams at the Family Child Care Office again on January 3, 5, 8, and 11, 2018, to report Villa's unauthorized childcare activities.  (Id. at ¶¶ 34-44).  K.C. reported numerous incidents, including seeing a young boy at Villa's home holding a lighter and attempting to light a trampoline on fire, prompting Military Police to go to Villa's residence.  (Id. at ¶ 38-42).  K.C. also reported that Villa had posted a Facebook advertisement for her unauthorized childcare services she provided on the military base.  (Id. at ¶ 44).

The First Amended Complaint asserts that the neighbor called the Family Child Care Office more than ten times in January and February 2018 to report continued unauthorized childcare

activities at Villa's residence.  (<u>Id.</u> at ¶¶ 46-47, 49-53).

Plaintiffs allege that K.C. continued to report unauthorized childcare activity by Villa in March 2018, including allegations that Villa had left the children alone at the home with a teenage foreign exchange student and that four children were left alone unsupervised in Villa's backyard.  (<u>Id.</u> at ¶¶ 56-58).

According to the First Amended Complaint, on March 27, 2018, K.C. gave a sworn statement to the Military Police investigators and provided videos and photos documenting her claims of the unauthorized childcare business being conducted at Villa's on-base residence.  (<u>Id.</u> at ¶ 60).

Plaintiffs allege that a few weeks later, on April 13, 2018, the neighbor again called the Family Child Care Office to report that she was still seeing pick-ups and drop offs at Villa's residence and that Villa was still advertising her services on Facebook.  (<u>Id.</u> at ¶ 62).

**Villa's Neighbor Provided Written Notice To The U.S. Army Garrison-Hawaii On February 20, 2019 Complaining Of Villa's Unauthorized Childcare Business**

The First Amended Complaint alleges that nearly a year after sending her last e-mail to the Family Child Care Office, in February 2019, Villa's neighbor, K.C., noticed further unauthorized childcare activity at Villa's residence, including children being left alone and unsupervised in Villa's backyard. (<u>Id.</u> at ¶ 64).

On February 20, 2019, the neighbor submitted a written complaint to the U.S. Army Garrison-Hawaii.  (Id. at ¶ 65).

Plaintiffs claim that on February 21, 2019, Military Police again went to Villa's residence and did not remove any children or preclude Villa from operating her childcare business.  (Id. at ¶ 66).

### 7-Month Old Abigail Lobisch Died In Villa's Child Care During An Overnight Visit Between February 23 and 24, 2019

According to the First Amended Complaint, on February 23, 2019, Villa took custody of Abigail and Zachariah Lobisch for overnight child care at her on-base military housing.  (Id. at ¶ 67).

Plaintiffs allege that Villa administered a lethal dose of diphenhydramine, commonly known as Benadryl, to 7-month old Abigail Lobisch in order to make the baby lose consciousness.  (Id. at ¶ 69).

On February 24, 2019, Abigal Lobisch was pronounced dead due to poisoning with lethal levels of diphenhydramine.  (Id. at ¶ 70).

The First Amended Complaint asserts that following the baby's death on February 24, 2019, the United States closed Villa's childcare facility on the same day.  (Id. at ¶ 71).

According to the First Amended Complaint, on July 20, 2019, the City and County of Honolulu charged Villa with Manslaughter in violation of Hawaii Revised Statutes § 707-702(1)(a) for the

death of Abigail.  (Id. at ¶ 72).

## STANDARD OF REVIEW

**FED. R. CIV. P. 12(b)(1)**

A plaintiff has the burden of proving that subject-matter jurisdiction does in fact exist.  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

Federal Rule of Civil Procedure 12(b)(1) requires that a case must be dismissed for lack of subject-matter jurisdiction when the Court lacks a constitutional or statutory basis to adjudicate the controversy.  Fed. R. Civ. P. 12(b)(1); Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975 (9th Cir. 2012).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction.  Id.  A facial challenge, therefore, mirrors a traditional motion to dismiss analysis.  The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction argues that the facts in the case, notwithstanding the

allegations in the Complaint, divest the Court of subject-matter jurisdiction.  <u>See</u> <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000).  No presumptive truthfulness attaches to the Complaint's allegations.  <u>Id.</u>  The party challenging jurisdiction presents "affidavits or other evidence properly brought before the court" indicating that subject matter jurisdiction is lacking.  <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  The burden then shifts to "the party opposing the motion [to] furnish affidavits or other evidence to satisfy its burden of establishing subject matter jurisdiction."  <u>Id.</u>; <u>Colwell v. Dep't of Health and Human Serv.</u>, 558 F.3d 1112, 1121 (9th Cir. 2009).  Failure to present suitable evidence establishing subject-matter jurisdiction necessitates dismissal.  <u>Moore v. Maricopa Cnty. Sheriff's Office</u>, 657 F.3d 890, 895 (9th Cir. 2011).

**FED. R. CIV. P. 12(b)(6)**

The Court must dismiss a complaint as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6) where it fails "to state a claim upon which relief can be granted."  Rule (8)(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of

the non-moving party.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  Id. at 699.  The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In Bell Atl. Corp. v. Twombly, the United States Supreme Court addressed the pleading standards under the Federal Rules of Civil Procedure in the anti-trust context.  550 U.S. 544 (2007). The Supreme Court stated that Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 555.

Most recently, in Ashcroft v. Iqbal, the Supreme Court clarified that the principles announced in Twombly are applicable in all civil cases.  129 S.Ct. 1937 (2009).  The Court stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  Id. at 1949 (citing Twombly, 550 U.S. at 555).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

13

its face.  _Id._ (quoting _Twombly_, 550 U.S. at 570).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  _Id._ (citing _Twombly_, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  _Id._ (quoting _Twombly_, 550 U.S. at 556).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  _Id._ (quoting _Twombly_, 550 U.S. at 557).

The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  _AE ex rel. Hernandez v. Cnty of Tulare_, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotations omitted).

## **ANALYSIS**

## I.  **THE FEDERAL TORT CLAIMS ACT AND THE DISCRETIONARY FUNCTION EXCEPTION**

The United States has sovereign immunity and cannot be sued without its consent.  _Lam v. United States_, 979 F.3d 665, 671

(9th Cir. 2020).  The Federal Tort Claims Act allows private suits against the United States for damages for loss of property, injury, or death caused by a government employee's negligence. <u>Myers v. United States</u>, 652 F.3d 1021, 1028 (9th Cir. 2011). Liability arises for the U.S. government employee's acts if a private person would be liable to the claimant under the law of the place where the act occurred.  28 U.S.C. § 1346(b)(1).  Such acts are typically common law torts.  <u>Lam</u>, 979 F.3d at 672 (citing <u>Dalehite v. United States</u>, 346 U.S. 15, 28 (1953)).

There are exceptions to Federal Tort Claims Act liability. One such exception is known as the "Discretionary Function Exception."  <u>Nanouk v. United States</u>, 974 F.3d 941, 944 (9th Cir. 2020).  The Government does not waive immunity for tort claims if the alleged tortfeasor was performing a discretionary function or duty when he or she caused the aggrieved injury.  28 U.S.C. § 2680(a).  The Discretionary Function Exception insulates certain governmental decision-making from "judicial second guessing" of legislative and administrative decisions grounded in policy. <u>Terbush v. United States</u>, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal quotation marks and citations omitted).

The Government bears the burden of establishing that the exception applies.  <u>Chadd</u>, 794 F.3d at 1108.

Courts follow a two-step test to determine whether the Discretionary Function Exception applies.  <u>Miller v. United States</u>,    F.3d   , 2021 WL 1152310, *5 (9th Cir. Mar. 26, 2021).

First, courts ask whether the challenged act or omission was a discretionary one.  That is, whether it "involves an element of judgment or choice."  Berkovitz v. United States, 486 U.S. 521, 536 (1988).

The Court looks to the applicable statutes, regulations, and policies to decide whether the United States retained discretion to act.  Ruffino v. United States, 374 F.Supp.3d 961, 968 (E.D. Cal. 2019); Bishop v. United States, Civ. No. 16-00248 JMS-KSC, 2017 WL 1381653, *8 (D. Haw. Apr. 13, 2017).

If the applicable statute, regulation, or policy does not involve an element of judgment or choice, the analysis ends there.  The Court has subject-matter jurisdiction, and the plaintiff's claim may proceed.  Nanouk, 974 F.3d at 945.

Second, if the Government's conduct involved an element of judgment or choice, the Court must then ask whether the discretionary decision challenged by the plaintiff "is of the kind that the discretionary function exception was designed to shield."  Berkovitz, 486 U.S. at 536; see United States v. Gaubert, 499 U.S. 315, 322 (1991).  The decision must be one that is grounded in social, economic, and political policy in order to be shielded by the exception.  Young v. United States, 769 F.3d 1047, 1053 (9th Cir. 2014) (citing Berkovitz, 486 U.S. at 536-37).

**A.    Evidence Presented By The Government**

As a preliminary matter, Plaintiffs object to Exhibits 1-7 attached to the Government's Motion.

<u>First</u>, the Government attempts to bring a substantive defense based on documentary evidence that is not appropriate in a 12(b)(6) Motion to Dismiss.  Exhibits 1-7 are not incorporated by reference in the First Amended Complaint and do not form the basis of the Plaintiffs' tort claims.

<u>Second</u>, the Court need only consider the evidence that is material to the jurisdictional issue for purposes of a 12(b)(1) motion to dismiss.  A 12(b)(1) Motion is not a vehicle to allow a party to submit factual evidence unrelated to the subject-matter jurisdiction analysis.  <u>Safe Air Everyone v. Meyer</u>, 373 F.3d 1035, 1039-40 (9th Cir. 2004).

<u>Third</u>, Plaintiffs also object to Exhibits 1-7 as not properly authenticated.

The Court agrees that Plaintiffs have raised some valid objections to Defendant's Exhibits 1-7 and some of the evidence is not properly authenticated.  The Court, however, declines to strike Exhibits 1-7.  The Court reviewed the Exhibits for purposes of the hearing and finds no prejudice to Plaintiffs in its considering the Exhibits.

<u>Finally</u>, the Army Regulations attached to the Government's Motion as Exhibits 8 and 9 are relevant to the Court's analysis. The Court considers statutes, cases, and regulations in

17

determining the relevant law.  See <u>Lemieux v. Cwalt, Inc.</u>, 2017 WL 365481, *1 (D. Mont. Jan. 25, 2017).

## B.   Plaintiffs Have Alleged That The Government Failed To Comply With Mandatory And Specific Military Regulations

The First Amended Complaint asserts that the Government had knowledge of the operation of Villa's unauthorized childcare business in her leased residence on military housing.  Plaintiffs claims that despite this knowledge, the Government and its employees failed to prevent Villa from operating her uncertified childcare business.  (First Amended Complaint at ¶ 4, ECF No. 10).

The Government argues in its Motion to Dismiss that the alleged acts and omissions of its employees involved discretionary decisions that are not subject to judicial review.

### 1.   AR 608-10 Governs The Operation Of Childcare Businesses On Military Bases

United States Army Regulation 608-10 governs the policies and procedures for establishing and operating a childcare business on military bases.  AR 608-10, Chapter 6.  Regulation 608-10 defines "Family Child Care" as child care provided by authorized military family members operating as independent contractors from housing located on a military installation or on government property.  <u>Id.</u> at § 1-1(a); <u>see</u> § 1-8(e).

Chapter 6 of AR 608-10 governs the establishment of a Family

Child Care Office to oversee the childcare businesses occurring in leased homes on military bases.  Section 6-1 explains that Family Child Care businesses are "regulated by the U.S. Army and both the individual providing services (FCC provider) and the occupied housing unit (FCC home) will be certified by [Child Development Services] before children may be enrolled in care." Id. at § 6-1(b).

The Regulation explains that when unauthorized child care is occurring in Government owned or leased housing and is brought to the attention of the Family Child Care Office, the Regulation requires the following actions:

(1)  [Family Child Care] management personnel **will** visit the home within 3 working days, to verify whether or not an individual is operating a [Family Child Care] home without valid certification...If the occupant refuses admittance, the Provost Marshall will be contacted.

(2)  If it is determined that care in excess of 10 child care hours per week is being provided on a regular basis, the individual providing care **will** be informed in writing within two working days after the visit by the installation commander of the violation and given notice to cease care immediately.  Those individuals occupying Government housing **will** be advised that their housing privileges may be terminated if the care continues.  A copy of this letter **will** be sent to the [Director of Engineering and Housing].

(3)  Parents of the children in care **will** be notified in writing of the status of the individual providing care; and that the person is not certified;

(4)  If the individual does not become provisionally certified at the first possible opportunity after the resumption of care, **the [Family Child Care] home will be closed.**  The individual involved **will** be advised of this policy.

Id. at § 6-38(a), (b), (e), (f)(3) (emphasis added).

**2.    AR 608-10 Contains Mandatory Directives That Are Not Subject To Discretion**

The United States Supreme Court explained in <u>Berkovitz v. United States</u>, 486 U.S. at 536, that where conduct violates a mandatory directive and is not the product of judgment or choice, it cannot be discretionary.  The Discretionary Function Exception does not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.  <u>Id.</u>; <u>Miller</u>,   F.3d   , 2021 WL 1152310, *5.

There can be no dispute that AR 608-10 expressly prohibits unauthorized childcare in military on-base housing.  <u>See</u> AR 608-10 § 6-38, C-171, C-253.  The Army Regulation requires that Family Child Care businesses within military housing "must" be certified and that individuals who provide such care "will be certified" before children may be enrolled in their care.  <u>Id.</u> at § 1-8(e), 6-1(b).

AR 608-10 additionally contains a series of mandatory protocols that prescribe a course of action the Government employees are required to follow to ensure that unauthorized child care is not taking place on military bases.  <u>Miller</u>, F.3d   , 2021 WL 1152310 *5 (explaining that if an applicable federal regulation prescribes a course of action, then the discretionary function exception does not apply).

Plaintiffs allege that Government employees failed to follow a number of the mandatory directives set forth in AR 608-10.  For

example, Plaintiffs allege that the Government failed to close Villa's unauthorized childcare business after they were notified about her activities.  The language in AR 608-10 § 6-38 is clear that it is mandatory for the Family Child Care Office to close an unauthorized child care on the military base if the individual does not comply with its certification rules.  See also id. at § C-253.

Plaintiffs additionally allege that Government officials failed to follow the course of action prescribed in the regulation when it received notice of an unauthorized childcare business.  For example, Plaintiff allege the Family Child Care Office and military officials failed to warn parents about Villa's unauthorized business and failed to require Villa to undergo required training to operate a childcare facility. Plaintiffs point to the mandatory directives to support these allegations.  See id. at § 6-38(a), (b), (e),

The First Amended Complaint specifically alleges that the Family Child Care Office and Military Police were notified more than a dozen times and were provided with photographic, video, and documentary evidence that Villa was operating an unauthorized childcare facility and that the Government failed to follow its own Regulations which required closing the operation.  (First Amended Complaint at ¶¶ 31-65, ECF No. 10).

### C. The Government Has Failed To Demonstrate That Plaintiff's Tort Claims Are Limited To Discretionary Decisions By Government Employees

Army Regulation 608-10 "specifically prescribes a course of action for an employee to follow" and "the employee has no rightful option but to adhere to the directive." <u>Berkovitz</u>, 486 U.S. at 536.  A statute or policy that directs mandatory and specific action is not subject to the Discretionary Function Exception.  <u>Terbush</u>, 516 F.3d at 1129.

The Government argues that the Discretionary Function Exception applies to bar all of Plaintiffs' tort claims.  The Government, however, ignores the mandatory nature of AR 608-10. There is nothing discretionary in the Regulation's directives that would permit Government officials to ignore the unauthorized operation of a childcare business in military on-base housing. There is no language indicating there is an element of judgment or choice for the Government employee to use their discretion to refuse to implement the protocols set forth in AR 608-10 § 6-38 and C-253.  There is no permissive language, but rather the Regulations repeatedly state what the employees "must" or "will" do.

#### 1. The Government's Reliance On AR 420-1 Is Misplaced

The Government's Motion presents Plaintiffs' theory of the case as requiring the Government to evict the Villa family from on-base housing.  The Government directs the Court to the

discretionary nature of Army Regulation 420-1, which affords the Garrison Commander discretion to proceed with eviction for violation of housing rules.

The Government overly simplifies Plaintiffs' claims. Plaintiffs have alleged various negligent acts by numerous Government employees that are not related to eviction. Plaintiff's causes of action are not premised solely on the Garrison Commander's decision whether to evict the Villas.

In addition, the Government does not address the various other theories of Plaintiffs' negligence claims.  Plaintiffs allege that the Government failed to comply with "34 U.S.C. § 20341, the October 7, 2003 Memorandum of Agreement between military Services in Hawaii and State of Hawaii, Department of Human Services, Child Welfare Services Branch as well as H.R.S. Chapter 350, Child Abuse § 350-1 <u>et. seq.</u>; Chapter 587, Child Protective Act § 587-1 <u>et. seq.</u>; and Army Regulations 608-10 and 608-18, The Army Family Advocacy Program."  (First Amended Complaint at ¶ 97, ECF No. 10).

The Government argues that there was nothing the military or its employees could have done to prevent Villa from operating her unauthorized childcare business in the on-base military housing it provided to her.  The Government's argument is not well taken. Plaintiffs have pointed to several mandatory directives in the Army's regulations that they allege Government officials ignored, failed to follow, and omitted.  It is simply incorrect that the

23

United States Military has no power, ability, or resources to stop unlawful acts of a military spouse residing in its on-base housing while her husband was deployed.  There are mandatory and specific directives outlining the requirements for the employees to follow to ensure compliance with AR 608-10.

>        **2.    The Discretionary Function Exception Does Not Bar Tort Claims Where A Regulation Or Policy Requires The Government Employee To Take Mandatory Action**

The Discretionary Function Exception cannot apply when an applicable statute, regulation, or policy specifically prescribes a course of action.  <u>Berkovitz</u>, 486 U.S. at 536.

In <u>Myers v. United States</u>, 652 F.3d 1021, 1023 (9th Cir. 2011), the plaintiff sought damages from the United States for injuries to a child allegedly caused by exposure to toxic soil in a landfill adjacent to the child's residence and school.  The plaintiff argued that the Navy was required to take mandatory and specific action with respect to the toxic soil based on the Navy's Safety and Health Program Manual and an Environmental Protection Agency plan that the Navy entered into to ensure that all of the work was performed properly.  <u>Id.</u> at 1029.

On appeal, the Ninth Circuit Court of Appeals ruled that the Navy's Manual specifically required the Navy to review all health and safety plans prior to initiating work on the site by a certified industrial hygienist or equivalent.  <u>Id.</u> at 1030.  The appellate court explained that because the Manual imposed

24

mandatory and specific requirements for review by the Navy, the Discretionary Function Exception did not bar the plaintiff's claims.  Id.  The appeals court explained that even supposing the Navy had some discretion in the manner in which it fulfilled its duty, it had no discretion under the policy about whether it had to review the health and safety plan at all.  Id.

Similarly, in Bolt v. United States, 509 F.3d 1028, 1032-33 (9th Cir. 2007), the Ninth Circuit Court of Appeals found that the Army's Snow Removal Policy was sufficiently specific and mandatory to avoid application of the Discretionary Function Exception in a case where the plaintiff sought damages for a slip and fall on a military base.

Recently, the Ninth Circuit Court of Appeals ruled that the Discretionary Function Exception did not bar negligence-based claims following the deaths of two boys who were killed when a tree limb fell on their tent in Yosemite National Park.  Kim v. United States, 940 F.3d 484, 491 (9th Cir. 2019).  The appellate court explained that Park Directives required the Park officials to take action with respect to trees that appeared hazardous in the campground.  Id.  Although Park officials had some discretion with respect to which type of mitigation to perform in response to the danger, the applicable policies required officials to do something, including at least warn the campers, and the failure to do anything, upon notice of the condition of the trees, was not protected by the Discretionary Function Exception.  Id.; see

25

Marlys Bear Med. v. U.S. ex re. Sec. of Dept. of Interior, 241
F.3d 1208, 1215 (9th Cir. 2001) (explaining that once the
Government has undertaken responsibility for the safety of an
area, the execution of that responsibility is not subject to the
Discretionary Function Exception).

        **3.**    **The Army Is Required To Act And To Follow Specific
Procedures Pursuant To AR 608-10 To Close Down An
Uncertified Childcare Operation And To Notify
Parents In Writing**

AR 608-10 contains mandatory language and specific
procedures for the Army to follow to ensure that no unauthorized
childcare business may be conducted on a military base.
Childcare businesses require certification and approval from the
Family Child Care Office.  The requirements in AR 608-10 are
mandatory.  The Family Child Care Office is required to close an
unauthorized child care on the military base if the individual
does not comply with its certification rules.  See AR 608-10 §§
6-38(a), (b), (e), (f)(3), § C-253.

Plaintiffs allege that the Government and its employees
failed to comply with the mandatory and specific procedures set
forth in AR 608-10.  The Government regulations do not fall under
the Discretionary Function Exception.  Kim, 940 F.3d at 491;
Myers, 652 F.3d at 1023; Bolt, 509 F.3d at 1032.

The Discretionary Function Exception cannot apply when an
applicable statute, regulation, or policy specifically prescribes
a course of action.  Berkovitz, 486 U.S. at 536.  If the

employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the Discretionary Function Exception to protect.  Id.

AR 608-10 prescribes mandatory directives and a specific course of conduct, and it does not provide Government employees with discretion to ignore its directives.  The Discretionary Function Exception analysis ends here.  The Court has subject-matter jurisdiction, and Plaintiffs' claims may proceed.  Hieda v. United States, 836 F.Supp.2d 1105, 1117 (D.Haw. 2011); Greene v. United States, 207 F.Supp.2d 1113, 1122 (E.D.Cal. 2002); Washington v. Dep't of Navy, 446 F.Supp.3d 20, 26 (E.D.N.C. 2020) (finding the Discretionary Function Exception did not apply because the Department of Navy Regulations at issue provided for specific and mandatory government conduct with respect to drinking water on the base that the Government could not ignore).

The Government's Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED.**

## II.  PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR NEGLIGENCE CAUSES OF ACTION

Defendants also seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing Plaintiffs have failed to allege sufficient facts to support negligence causes of action.

Pursuant to Hawaii law, a successful negligence claim must allege the following four elements:

(1)   a duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

(2)   a failure on the actor's part to conform to the standard required;

(3)   a reasonably close causal connection between the conduct and the resulting injury; and,

(4)   actual loss or damage resulting to the interests of another.

Ono v. Applegate, 612 P.2d 533, 538-39 (Haw. 1980).

## A.   Duty of Care

A prerequisite to any negligence action is the existence of a duty owed by the defendant to the plaintiff.  Maguire v. Hilton Hotels Corp., 899 P.2d 393, 395 (Haw. 1995).

Hawaii state law imposes a duty to control the conduct of another in order to protect a third party when a special relationship exists.  Lee v. Corregedore, 925 P.2d 324, 329 (Haw. 1996); Hanakahi v. United States, 325 F.Supp.2d 1125, 1131 (D. Haw. 2002).

Hawaii law follows the Restatement (Second) of Torts, which provides:

**Section 315**
There is no duty so to control the conduct of a third person as to prevent him from causing harm to another unless:

(a)   a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

> (b)  a special relation exists between the actor
>       and the other which gives to the other a
>       right to protection.

Restatement (Second) of Torts § 315.

> **Section 319**
> One who takes charge of a third person whom he knows or
> should know to be likely to cause bodily harm to others
> if not controlled is under a duty to exercise
> reasonable care to control the third person to prevent
> him from doing such harm.

Restatement (Second) of Torts § 319; see Seibel v. City and
Cnty. of Honolulu, 602 P.2d 532, 536 (Haw. 1979).

> **Section 324A**
> One who undertakes, gratuitously or for consideration,
> to render services to another which he should recognize
> as necessary for the protection of a third person or
> his things, is subject to liability to the third person
> for physical harm resulting from his failure to
> exercise reasonable care to protect his undertaking,
> if:
>
> > (a)  his failure to exercise reasonable care
> >      increases the risk of such harm, or
> >
> > (b)  he has undertaken to perform a duty owed by
> >      the other to the third person, or
> >
> > (c)  the harm is suffered because of reliance of
> >      the other or the third person upon the
> >      undertaking.

Restatement (Second) of Torts § 324A.

Here, the First Amended Complaint contains numerous
allegations that the United States owed Plaintiffs and Abigail
Lobisch a duty of care because it knew or should have known that
Villa's unauthorized childcare operation on its military base
was likely to cause harm to children.  (First Amended
Complaint at ¶¶ 86-87, 90-91, ECF No. 10).

Plaintiffs' First Amended Complaint asserts the United

States had a special relationship to the children who received child care at Villa's uncertified childcare facility and the United States had a duty to investigate and duty to warn parents of children of unsafe conditions and neglect if the Government was aware they were occurring.  (Id. at ¶¶ 90-91).

The First Amended Complaint contains numerous allegations that the Government was repeatedly informed that Villa was engaging in unauthorized child care resulting in dangerous conditions, harm, and neglect of children.  Plaintiffs allege that a neighbor reported "multiple children crying and screaming, without adult supervision, in the backyard of the facility, and of one occasion when a little boy, crying because his head was stuck in a play structure, had been essentially abandoned until other little children were able to free him." (Id. at ¶ 33).  Plaintiffs allege a young boy at Villa's home was seen holding a lighter and attempting to light a trampoline on fire.  (Id. at ¶ 38).  The First Amended Complaint alleges that multiple reports were made to Government officials of seeing children unattended and inadequately supervised at Villa's unauthorized childcare operation.  (Id. at ¶¶ 56-58).

Plaintiffs have sufficiently alleged that a special relationship existed between Plaintiffs and the Government. There are allegations that the Government undertook the duty to protect children on its military base and that it knew or should have known that Villa and her unauthorized childcare facility

posed a risk to the children placed in her care. <u>Wada v. Aloha King, LLC</u>, 154 F.Supp.3d 981, 997 (D. Haw. 2015) (finding a special relationship existed for a company that conducted background checks of employees for a storage facility; the court found the company should have foreseen the possibility that the employee, for whom it undertook a responsibility to screen, was possibly likely to cause harm when it failed to disclose his criminal history and registration as a sex offender); <u>see Williams v. United States</u>, 711 F.Supp.2d 1195, 1207-09 (D. Haw. 2010) (finding that the military's regulations concerning handling of child abuse allegations on military installation created a "Good Samaritan" special relationship duty of care).

## B.   Whether The Harm To Plaintiffs Was Reasonably Foreseeable

The Government argues that the death of Abigail Lobisch was not reasonably foreseeable and Plaintiffs should be barred from recovering any damages on their negligence causes of action. (Def.'s Motion at p. 28, ECF No. 36-1).

The Hawaii Supreme Court has explained that the test of whether the harm suffered by a plaintiff is reasonably foreseeable "is whether there is some probability of harm sufficiently serious that a reasonably prudent person would take precautions to avoid it." <u>Pulawa v. GTE Hawaiian Tel</u>, 143 P.3d 1205, 1215 (Haw. 2006) (quoting <u>Knodle v. Waikiki Gateway Hotel, Inc.</u>, 742 P.2d 377, 384-85 (Haw. 1987)).

31

First, the Government argues that it cannot be liable for any alleged acts of Villa because criminal acts by a third-party cannot be reasonably foreseeable.

Hawaii courts have ruled, however, that when a defendant has a special relationship with the victim of a crime, the defendant has a duty to protect the victim from unreasonable risk of harm and is liable for foreseeable criminal acts. Polm v. Dep't of Human Srvs., 339 P.3d 1106, *18 (Haw. App. Dec. 30, 2014) (citing Knodle, 742 P.2d at 384-85)).

Here, the Court has ruled as a matter of law that the Government owed a duty of care to Plaintiffs based on the special relationship in this case.  The Government may be liable for foreseeable harm based on the special relationship. Knodle, 742 P.2d at 384-85 (holding that the hotel had a special relationship with a hotel guest so as to have a duty to protect the guest from any foreseeable criminal acts).

Second, the Government argues that the harm to Plaintiffs was not reasonably foreseeable in this case because "there [was] no evidence of any abuse or neglect allegations brought by any of the parents of the children that Mrs. Villa cared for," but only reports of wrongdoing by a neighbor.  (Gov't Motion at p. 29, ECF No. 36-1).

The questions raised by the Government are questions of fact for trial. Pulawa, 143 P.3d at 1215.  The questions of notice, causation, and whether the specific act or omission of

the Government was such that the ultimate injury to the Plaintiffs reasonably flowed from the breach of the Government's duty are questions for the trier of fact.  Id.

Pursuant to the Federal Tort Claims Act, trial as to the Government Defendant is before the Court.  Disputed factual questions may not be resolved on a Motion to Dismiss.

The Government's Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED.**

<u>**CONCLUSION**</u>

The Defendant United States' Motion to Dismiss (ECF No. 36) is **DENIED.**

IT IS SO ORDERED.

DATED: March 31, 2021, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Anna Lobisch, Individually, and as Personal Representative for the Estate of Abigail Lobisch, A Minor, Deceased, and as Next Friend of Zachariah Lobish, A Minor; and James Lobisch, Individually v. United States of America; Island Palm Communities, LLC; Doe Defendants 1-10, Civ. No. 20-00370 HG-KJM; **ORDER DENYING DEFENDANT UNITED STATES' MOTION TO DISMISS (ECF No. 36)**            33